# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| NATHANIEL M. COSTLEY | * | |
| v. | * | Civil Case No. ELH-18-179 |
| COMMISSIONER, SOCIAL SECURITY[1] | * | |

*************

## REPORT AND RECOMMENDATIONS

Pursuant to Standing Order 2014-01, the above-referenced case has been referred to me for review of the parties' dispositive motions, [ECF Nos. 16, 17], and to make recommendations pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 301.5(b)(ix). I have reviewed the filings, and I find that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2016). This Court must uphold the decision of the Social Security Administration ("the SSA") if it is supported by substantial evidence, and if the SSA followed the law. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I recommend that the Court deny Mr. Costley's motion, grant the SSA's motion, and affirm the SSA's judgment pursuant to sentence four of 42 U.S.C. § 405(g).

Initially, I note that one of Mr. Costley's assertions is that he had an initial hearing before one Administrative Law Judge ("ALJ"), Judge Vivian W. Mittleman, who made certain representations at the hearing about her intent to write an opinion granting benefits if Mr. Costley were to provide paperwork about why he lost his prior jobs. *See* Pl. Mot. at 3-4; (Tr. 85) ("So, you get me that paperwork and we'll put it together and I will write a legally sufficient Decision that says that while you're in therapy, and working on this, you can't work."). Mr. Costley then

---

[1] Currently, the position of Commissioner of the Social Security Administration is vacant, and most duties are fulfilled by Nancy A. Berryhill, Deputy Commissioner for Operations, performing the duties and functions not reserved to the Commissioner of Social Security.

attended two consultative examinations (apparently ordered by ALJ Mittleman), provided some additional records to the SSA, and requested a supplemental hearing. (Tr. 10, 425, 1032-41). Before the supplemental hearing, Mr. Costley's case was reassigned to a different ALJ. (Tr. 10). Mr. Costley asserts that the second ALJ acted in a "racist and sexist" manner, Pl. Mot. 4, though I find no evidence to support those allegations in the record. I do believe that ALJ Mittleman should not have made representations about the potential outcome of the proceeding until she had all of the evidence in front of her, as her comments understandably created certain expectations on the part of Mr. Costley. Unfortunately, although I understand why the process of reassignment would appear unfair to Mr. Costley given the statements ALJ Mittleman had made, this Court is limited to reviewing the final decision rendered by the second ALJ after a full hearing of all of the evidence. *See* 42 U.S.C. § 405(g) (limiting judicial review to "any final decision of the Commissioner of Social Security made after a hearing to which [the claimant] was a party."). ALJ Mittleman never issued a final decision for this Court to review, and the process of the reassignment to a new ALJ is beyond the scope of this Court's jurisdiction to consider. *See id.*

As background, Mr. Costley filed his claim for Disability Insurance Benefits in October, 2013, alleging a disability onset date of June 24, 2009. (Tr. 323-24). His claim was denied initially and on reconsideration. (Tr. 206-09, 211-12). Mr. Costley had an initial pre-hearing conference with a staff attorney, and then the hearing before ALJ Mittleman on March 8, 2016. (Tr. 50-63, 64-88). The supplemental hearing described above took place on October 26, 2016, and consisted of testimony from Mr. Costley, three of his family members, and a vocational examiner ("VE"). (Tr. 89-180) Following the supplemental hearing, the ALJ issued a written opinion in which she determined that Mr. Costley was not disabled within the meaning of the

Social Security Act during the relevant time frame. (Tr. 10-34). On November 20, 2017, the Appeals Council declined review, making the ALJ's decision the final, reviewable decision of the SSA. (Tr. 1-6). Mr. Costley filed the instant suit seeking review of that decision on January 19, 2018. [ECF No. 1].

The ALJ found that, while Mr. Costley had some periods of substantial gainful activity ("SGA"), there had been continuous twelve month periods since his onset date during which he did not engage in SGA. (Tr. 12-14). The ALJ further concluded that Mr. Costley suffered from the severe impairments of "degenerative disc disease and affective disorder." (Tr. 14). Despite these impairments, the ALJ determined that Mr. Costley retained the residual functional capacity ("RFC") to:

> perform sedentary work as defined in 20 CFR 404.1567(a) except he needs a break to sit for a few minutes after standing for one hour. He needs a break to stand for a few minutes after sitting for one hour. He can never climb ladders, ropes, or scaffolds. He can occasionally climb ramps and stairs. He can occasionally balance on uneven surfaces, stoop, kneel, and crouch. He can frequently reach. He can have occasional interaction with supervisors, co-workers, and the public.

(Tr. 20). After considering the testimony of a vocational expert ("VE"), the ALJ determined that Mr. Costley could perform several jobs existing in significant numbers in the national economy, including assembler, inspector, and electronics worker, and that, therefore, he was not disabled. (Tr. 33-34).

I have carefully reviewed the ALJ's opinion and the entire record. *See Elam v. Barnhart*, 386 F. Supp. 2d 746, 753 (E.D. Tex. 2005) (mapping an analytical framework for judicial review of a *pro se* action challenging an adverse administrative decision, including: (1) examining whether the SSA's decision generally comports with regulations, (2) reviewing the ALJ's critical findings for compliance with the law, and (3) determining from the evidentiary record whether

substantial evidence supports the ALJ's findings). For the reasons described below, substantial evidence supports the ALJ's decision.

The ALJ proceeded in accordance with applicable law at all five steps of the sequential evaluation. The ALJ largely ruled in Mr. Costley's favor at step one and determined that, despite some work activity within the relevant time frame, there were continuous 12-month periods during which he did not engage in substantial gainful activity. (Tr. 12-14); *see* 20 C.F.R. § 416.920(a)(4)(i). The ALJ specified that her remaining findings addressed the period(s) in which Mr. Costley did not engage in substantial gainful activity. (Tr.13). At step two, the ALJ considered the severity of each of the impairments that Mr. Costley claimed prevented him from working. *See* 20 C.F.R. § 416.920(a)(4)(ii). Although the ALJ deemed some impairments to be either not medically determinable or non-severe, after finding several of Mr. Costley's impairments to be severe, (Tr. 14-17), the ALJ continued with the sequential evaluation and considered, in assessing Mr. Costley's RFC, the extent to which all of his mental and physical impairments limited his ability to work, (Tr. 20-30).

At step three, the ALJ determined that Mr. Costley's severe impairments did not meet, or medically equal, the criteria of any listings. (Tr. 17-20). In particular, the ALJ considered the specific requirements of Listings 1.04A (degenerative disc disease), 12.04 (affective disorders), 12.08 (personality and impulse control disorders), and 12.09 (substance abuse disorders, now defunct). *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 §§ 1.04A, 12.04, 12.08 (2016). The ALJ supported her conclusion that Listing 1.04A was not met with detailed references to Mr. Costley's medical records. (Tr. 17-18). The ALJ concluded that Mr. Costley had mild restriction in his activities of daily living, moderate difficulties in social functioning, and mild difficulties in concentration, persistence, or pace. (Tr. 18-19). The ALJ also found no episodes

4

of decompensation of extended duration. *Id.* The ALJ supported those assessments with citations to the evidence of record. *Id.* Under the mental health listings, a claimant would need to show at least two areas of marked difficulty, or repeated episodes of decompensation, to meet the listing criteria. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.04. Accordingly, the ALJ did not err by concluding that the listings were not met.

In considering Mr. Costley's RFC, the ALJ summarized his subjective complaints from his testimony at both hearings, along with the testimony provided by his three family members. (Tr. 20-21). The ALJ then engaged in a detailed and extensive review of Mr. Costley's daily activities and medical records. (Tr. 22-29). The ALJ noted that Mr. Costley's testimony that he can barely walk stood in contrast to his ability to attend sporting events for his son, to perform job duties for some of the positions he had held during the alleged period of disability, and to attain normal or relatively normal findings on physical examinations. (Tr. 23-24). The ALJ also noted that, two days before the alleged onset date, Mr. Costley told his employer that he would be able to complete his internship if given the opportunity, which undermines his contention that he had disabling physical impairments. (Tr. 23).

Turning to the mental impairments, the ALJ noted that Mr. Costley's primary care physician had certified that he was "mentally stable enough to hold a commercial driver's license for a continuous four-year period since the alleged onset date," and that Mr. Costley had denied psychiatric or mental symptoms on numerous examinations over the years. (Tr. 24). The ALJ also stated that, in her testimony, "[t]he claimant's wife did not mention any psychological problems until prompted by the claimant." (Tr. 24). The ALJ discussed the modest findings from the second consultative State agency psychiatrist, Dr. Langlieb. *Id.* The ALJ acknowledged that while the record demonstrates that Mr. Costley has had some problems

5

getting along with others at work, at other times he has held jobs requiring extensive social functioning, such as car salesman and sports coach. (Tr. 24-25). The ALJ also noted that Mr. Costley was able to run for city council and participate in a debate, and had been polite and respectful during the Social Security proceedings and his various doctors' appointments. (Tr. 25). Mr. Costley had also held jobs requiring significant concentration, persistence, and pace, particularly the positions of car salesman and teacher for Rite of Passage. *Id.* The ALJ noted that Mr. Costley had told physicians that prescribed psychotropic medications were helpful, but that he had testified to ALJ Mittleman that he refused to take those medications. (Tr. 26). Despite referrals from various medical sources, Mr. Costley had been noncompliant with both physical and mental treatment recommendations. (Tr. 26-27).

Importantly, the ALJ discussed evidence suggesting that Mr. Costley's termination from various jobs had not been related to his anger issues. (Tr. 27-29). For example, "the record shows that the claimant resigned from his job at Enterprise in 2007 to return to college to earn his Masters Degree in Business Administration" (Tr. 28), that he was terminated from an internship in part due to poor attendance and unexcused absences, *id.*, that he left his substitute teaching job "because he was not given a raise," *id.*, and that, with respect to the job as car salesman, he "did not like the job and left." *Id.* In addition, Mr. Costley had made other allegations about his inability to obtain or keep a job because of his status as an "ex offender," not because of his physical or mental limitations. (Tr. 28-29).

The ALJ also assessed and made assignments of weight to the medical opinions in the record. (Tr. 29-31). In particular, the ALJ assigned "great weight" to the opinions from the consultative State agency medical experts, which were "more limiting than the physical examination opinions provided by the claimant's primary care physician, Dr. Alongi." (Tr. 29).

The ALJ assigned "little weight" to medical opinions from Dr. Howard Hoffberg and Dr. Roger Theodore, (Tr. 1328-33, 1561-62, 1564-67), citing the lack of a longitudinal treating relationship and the inconsistency with the record as a whole. (Tr. 29). As to Mr. Costley's mental impairments, the ALJ assigned "partial weight" to the opinions of the consultative State agency experts, because the ALJ believed Mr. Costley to be more limited in social functioning than those doctors had determined. (Tr. 29-30). The ALJ assigned "little weight" to Dr. Alongi's opinion that Mr. Costley was disabled due to depression, citing Dr. Alongi's lack of specialty in mental health, Mr. Costley's minimal mental health treatment, and the inconsistent reports from the State agency mental health consultants and the psychiatrist who served as a consultative examiner. (Tr. 30). The ALJ also considered the GAF scores assessed by medical sources, particularly the opinion of Dr. Smith, but noted that it had been assessed more than twenty years ago and assigned it "little weight." (Tr. 30-31).

Ultimately, my review of the ALJ's decision is confined to whether substantial evidence, in the record as it was reviewed by the ALJ, supports the decision and whether correct legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390 (1971). Even if there is other evidence that may support Mr. Costley's position, I am not permitted to reweigh the evidence or to substitute my own judgment for that of the ALJ. *See Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). In considering the entire record, and given the detailed and ample evidence outlined above, I find the ALJ's RFC determination was supported by substantial evidence.

Next, the ALJ determined that Mr. Costley could not perform any past relevant work. (Tr. 31-32). Accordingly, the ALJ proceeded to step five and considered the impact of Mr. Costley's age, level of education, work experience, and RFC on his ability to adjust to new work. (Tr. 33-34). In doing so, the ALJ cited the VE's testimony that a person with Mr. Costley's RFC

7

would be capable of performing the jobs of "assembler," "inspector," or "electronics worker." (Tr. 33). I note that Mr. Costley had objected to the VE's expertise, and had sought to ask her questions regarding her ethnicity and her experience in job placement of African American men with prison records. (Tr. 163, 167, 173). The ALJ, however, need not consider whether Mr. Costley's criminal record would preclude him from obtaining certain jobs. *See Hunter v. Astrue*, 254 Fed. App'x. 604, 606–07 (9th Cir. 2007). Rather, the ALJ must only consider whether Mr. Costley's physical or mental impairments are severe enough to preclude him from engaging in substantial gainful work, regardless of whether he would be hired if he applied for the positions. 42 U.S.C. § 423(d)(2)(A); *Hunter*, 254 Fed. App'x at 606-07. The ethnicity of the VE is clearly not relevant to the proceeding, and the ALJ properly excluded Mr. Costley's questioning and overruled his objection. (Tr. 174) ("We do not consider race or ethnicity in terms of deciding whether or not a person can perform a job.").

Further, I note that Mr. Costley appears to suggest that the jobs identified by the VE and the ALJ are not commensurate with his extensive educational background, including a masters' degree. *See* Pl. Mot. at 4; (Tr. 172) ("Are any of these jobs comparable or compatible with my level of education. . . ?"). However, the inquiry required in Social Security disability proceedings is whether there is any substantial gainful employment that a claimant is capable of performing, not whether the work a claimant can currently perform is similar in nature or salary to work the claimant may have performed in the past. *See Celani v. Weinberger,* 393 F. Supp. 804, 811 (D. Md. 1975) ("It is immaterial that the employment for which plaintiff may be capable is less remunerative than that in which he was engaged prior to his impairment."). Based on the VE's testimony, then, the ALJ concluded that Mr. Costley was capable, with his current impairments, of successfully adjusting to other jobs that exist in significant numbers in the

national economy. (Tr. 33-34). The ALJ's reliance on the VE's testimony constitutes substantial evidence supporting the ultimate conclusion that Mr. Costley was not disabled.

**CONCLUSION**

For the reasons set forth above, I respectfully recommend that the Court DENY Plaintiff's Motion for Summary Judgment, [ECF No. 16], GRANT Defendant's Motion for Summary Judgment, [ECF No. 17]; and order the Clerk to CLOSE this case.

Any objections to this Report and Recommendations must be served and filed within fourteen (14) days, pursuant to Federal Rule of Civil Procedure 72(b)(2) and Local Rule 301.5(b).

**NOTICE TO PARTIES**

Failure to file written objections to the proposed findings, conclusions, and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a *de novo* review of the determinations contained in the report and such failure shall bar you from challenging on appeal the findings and conclusions accepted and adopted by the District Judge, except upon grounds of plain error.

Dated: September 24, 2018                                       /s/
                                                        Stephanie A. Gallagher
                                                        United States Magistrate Judge